NUNC PRO TUNC
1/13/2020

**FILED**
Jan 14 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ Julieo  DEPUTY

Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

PETER STROJNIK,

    Plaintiff,

vs.

VILLAGE 1017 CORONADO, INC. DBA HOTEL MARISOL CORONADO

    Defendant.

Case No: 19-cv-2210 BAS MSB

**PLAINTIFF'S VERIFIED RESPONSE TO DEFENDANT'S MOTION TO DISMISS [4]**

## INTRODUCTION

Plaintiff initially moves to strike all irrelevant, scandalous and impertinent matters from Defendant's Motion to Dismiss [4-1] in Defendant's introduction[1].

Defendant's introductory quarrel focuses on Plaintiff's dissociation from the Arizona State Bar. Defendant obviously seeks to paint Plaintiff in a false light, but utterly fails in his endeavor[2]. Defendant believes that its own discriminatory and segregationist

---

[1] Actually, "Defendant's" introduction is Mr. Stillman's [Stillman] introduction. Stillman, primarily a Florida lawyer and a worthy adversary. He apparently trolls PACER, contacts ADA Defendants, solicits their business and files nearly identical motions to dismiss in every case involving this and other plaintiffs.

[2] Plaintiff, as lawyer, filed 1,700± cases in Arizona and earned $1.2M± in lawyer's fees and donated every penny of those fees to a 501(c)(3) civil rights organization for the disabled. The SBA did not like so Strojnik resigned from the SBA on October 24, 2018 for the reason that "[his] continuing association with the State Bar is inconsistent with [his] core principles of morality and fair play". But the SBA did not like this, either, demanding instead that Strojnik consent to disbarment. Strojnik, desperate to dissociate himself from

acts, see 42 U.S.C. §12101(a), amount to something less than oppression, segregation and bias. Defendant's view harkens to the most difficult time in American history when expressions such as *"segregation now, segregation tomorrow, segregation forever"* were the acceptable political and social points of view[3].

But history is a vicious, never forgetting mistress. As George Wallace is remembered as a racist, so will the proponents of disability segregation be remembered as ableists.

Plaintiff notes that Defendant's Motion confirms the dangerous pattern of evolution in ADA civil rights cases. Some advocates of ableism, as Defendant here, allege scandalous and impertinent[4] narrative as a furtive reconnaissance mission. They seek to determine whether the memorable observation by the Honorable Judge Melinda Harmon apply here. In *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014), Judge Harmon displayed the courage to state what civil rights litigants know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile**. *See* Lee, *Giving Disabled Testers Access to Federal Courts*, 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA*, 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores*, 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

---

the segregationist SBA, did so and then filed a lawsuit against the SBA, *see Strojnik v. SBA* (US DC Ariz. 2:19-cv-02704-DJH). Good reading!

[3] George Wallace inaugural address 1963.

[4] Allegation is "impertinent" if it is not responsive or relevant to the issues; it is "scandalous" if it improperly casts a derogatory light on someone. *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005)

2

Ableist advocates' strategy is not subtle. They are aware of a significant social undercurrent of the hostile skepticism to ADA litigation espoused by ADA segregationists. By continuous filing of baseless, scurrilous and irrelevant motions, Defendant is simply attempting to awaken a potentially fertile ground.

Plaintiff prays that the US District Court for the Southern District of California is not such fertile ground.

## SUMMARY OF RESPONSE

Strojnik is an immigrant, a veteran[5] and a disabled person as defined by the ADA and Unruh. Defendant owns an ADA, Unruh and DPA non-compliant lodging facility ("Hotel") in Coronado, California which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) and Unruh. Strojnik is an ADA tester attempting to advance the time when public accommodations comply with the ADA.

Defendant mounts a facial attack against the Complaint. In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the pleadings." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the court is required to accept as true all factual allegations set forth in the complaint, to the extent that all such allegations are not contradicted by the documents incorporated by reference. *See id.*

Defendant's Motion to Dismiss fails to distinguish between a *facial* and *factual* attack on this Court jurisdiction, treating its own *facial* attack as a *factual* one.

As more fully addressed below, Defendant's passionate arguments facially conflict with the allegations in the Complaint, the facts of this case and, indeed, with the current state of 9th Circuit ADA standing precedent in the following respects:

1. In its first argument, defendant argues that Plaintiff has failed to allege "injury in fact" because (a) he has allegedly failed to identify how Defendant's specifically enumerated and documented proof of ADA violations; and (b) plaintiff has failed to show that he has a disability that relates to the documented barriers. This argument is

---
[5] DMZ '72-'74

3

defeated by *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017) ("CREEC"). In fact, Defendant fails to even cite to *CREEC*.

2. In his second argument Defendant argues that Plaintiff failed to properly allege intent to return, citing to cases discussing factors to be considered in a *factual*, compared to *facial* attack on jurisdiction as this is. Pursuant to FRCP 9(b), "…intent…may be alleged generally". ¶12 of the First Amended Complaint, Doc. 9, Plaintiff alleges:

> 12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

3. In his third argument, Defendant claims that Plaintiff is not entitled to Unruh relief because (a) Plaintiff did not personally experience discriminatory barriers to accessibility (b) for the purpose of booking a room. This argument is contrary to the allegations in the Complaint [1] at Addendum A relating to booking websites, *see* p 8 and the personal barrier encounters documenting 9 distinct personal encounters with accessibility barriers, see id. at p 9. Defendant's argument is contrary to California law as further addressed below.

4. I his fourth argument, Defendant claims that the negligence cause of action fails to state a claim. This position is defeated by *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013), *David v. Hernandez*, 226 Cal. App. 4th 578, 584 (2014), *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 336 (1991) and a recent decision by the Honorable Sheila Oberto.

## DISCUSSION

### A. General

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under

Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984-85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936))

Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**B. ADA Standing**

In order to have constitutional standing, Plaintiff must demonstrate that (1) he has suffered an injury-in fact that is both concrete and particularized and actual or imminent; (2) the injury is traceable to the defendant's challenged action; and (3) it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In ADA cases, courts have been instructed "to take a broad view of constitutional standing . . . especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)(internal quotation marks and citations omitted). The Ninth Circuit has explained that there are two ways an ADA plaintiff can show a cognizable injury-in-fact: (1) by showing injury-in-fact plus an intent to return to the facility at issue; or (2) showing that he was deterred from visiting the facility because he encountered barriers relating to his disability there. *Id.* at 949.

### 1. Alternative ADA standing 1: Injury in fact plus intent to return.

#### a. Injury in Fact

In *CREEC*, the Court of Appeals stated, 867 F.3d at 1099:

> A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "**So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues.**" *Id.* at 1137. (Emphasis supplied)

Plaintiff has been injured in fact because the discriminatory conditions persist and Plaintiff is aware of them and remains deterred.

#### b. Intent to Return

While the *intent to return* factors are not relevant in a *facial* attack, *Wilson v. Kayo Oil Co., supra,* they are nonetheless addressed here.

To flesh out a plaintiff's intent to return, a court may look at the proximity of the facility to the plaintiff's residence, plaintiff's past patronage, plaintiff's concrete plans, and plaintiff's frequency of travel near the facility. *Molski v. Mandarin Touch Restaurant*, 385 F.Supp. 2d 1042, 1045 (C.D. Cal. 2005). The standard for determination of the intent to return is *plausibility*. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037, 1040 (9th Cir. 2008) in conjunction with the recent 4th Circuit Court of Appeals decision *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir., 2017) adopting this Court's *D'Lil's* plausibility standard. The question, then, is whether it is *plausible* for Plaintiff to travel near the facility in the future.

Plaintiff's proximity to Defendant's hotel weighs in favor of Plaintiff since the entire purpose of lodging facilities is to accommodate a traveler *from far away*. Plaintiff's past patronage of the Napa area is confirmed in Exhibit 1; Plaintiff, who is retired, travels

6

to California often, to wit, just in 2019, Plaintiff travelled to California and lodged there as follows:

    a. 2019-01-23 – San Diego
    b. 2019-02-16-17 – Solvang
    c. 2019-03-14-17 – Anaheim
    d. 2019-04-05 – Santa Barbara
    e. 2019-04-06 – Santa Clara
    f. 2019-04-07 – Carmel
    g. 2019-04-16 – Healdsburg
    h. 2019-04-17 – Calistoga
    i. 2019-04-18 – Napa
    **j. 2019-05-20 – La Jolla**
    **k. 2019-05-21 – San Diego**
    l. 2019-05-22 – Sorento Valley
    m. 2019-06-05 – Bakersfield
    n. 2019-06-06 – Redding
    o. 2019-06-07 – Sacramento
    p. 2019-06-07 – Fresno and Visalia
    **q. 2019-07-25-26 – Coronado**
    r. 2019-09-21-22 – Santa Ana
    s. 2019-09-26-27 – Monterey
    t. 2019-09-27-28 – Oakland
    u. 2019-09-28-30 – Napa
    v. 2019-11-22 – Ventura
    w. 2019-11-23 – Burlingame
    x. 2019-11-24 – Napa
    y. 2019-11-25 – Beverly Hills
    **z. 2019-12-10 – San Diego**
    **aa. 2020-02-19 – San Diego (anticipated travel)**

    Next, Defendant alleges that Plaintiff has no definite plan to the San Diego area. In fact, however, Plaintiff went to SD on December 10, 2019 to argue a case and will return on February 19, 2010 for same.

    Lastly, the entire argument that San Diego is too far for Plaintiff to travel to misses the point made by the Ninth Circuit Court of Appeals that a plaintiff suffers an " actual or imminent injury sufficient to establish standing where plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 539 F.3d 1031, 1037 (9th Cir. 2008) (citing *Doran*, 524 F.3d at 1037-38 (plaintiff

demonstrated actual or imminent injury where he established intent to return to 7-Eleven store 550 miles from home on his future trips, once the barriers to access were removed)). Indeed, the key inquiry remains whether Plaintiff had a likelihood of returning to the Defendant's facility. *D'Lil v. Stardust Vacation Club*, 2001 WL 1825832, at *3. To satisfy this standard, Plaintiff "must demonstrate her intent to return to the [San Diego] area and, upon her return, her desire to stay at the [Defendant's Facility] if it is made accessible." *Best Western*, 538 F.3d 1031, at 1037.

The State of California and, particularly, the City of San Diego, is not on a different planet. With the advent of the aero plane and the speedy motor car, it is merely a hip and a hop away from Phoenix.

### 2. Alternative ADA standing 2: Deterrence.

"[A]n ADA plaintiff who has encountered or has personal knowledge of at least one barrier related to his or her disability when he files a complaint and who has been deterred from attempting to gain access to the public accommodation because of that barrier, has suffered an injury in fact under Article III of the ADA." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008)

Here, Plaintiff has been *actually* deterred from visiting Defendant's Hotel when he personally on or about July 26-27, 2019.

Here, deterrence has been accurately and truthfully pled, FAC at ¶12, and, indeed, proven.

### C. The *CREEC* Decision

In *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("CREEC") the 9th Circuit Court of Appeals determined whether the named plaintiffs to a class action ADA lawsuit were "presently deterred from visiting [defendant's] hotels." Id. In determining whether standing was sufficiently pled, the court limited their evaluation to the pleadings. Id. The plaintiffs' complaint in *CREEC* stated that "they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA." Id. The court concluded that "[plaintiffs'] harm is 'concrete and particularized,' and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm

'actual or imminent, not conjectural or hypothetical.'" Id. (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 560, 560 (1992)).

Further, the defendant in CREEC contended, among other reasons, that plaintiffs (1) did not actually visit the hotels they just telephoned the hotel to inquire about transportation services available to disabled guests; (2) they do not intend to do so unless and until the alleged ADA violations are remedied; and (3) plaintiffs are motivated to visit the hotels only by their desire to test them for ADA compliance. Id. The court rejected all of defendant's arguments. Id. First, the court held that "the purported requirement urged by [defendant] of a 'personal encounter' with an access barrier lacks foundation in Article III" and "actually visiting a hotel, as opposing to phoning, does not make a plaintiff's injury any more concrete." Id[6]. The court further held that "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." Id. (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)) (emphasis added). As to the issue of personally encountering of a barrier, the court rejected defendants "invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under the ADA Title III." Id. at 1100.

Moreover, the court held that the named plaintiffs need not intend to visit the hotels until after remediation. Id. The court rejected defendant's argument that plaintiff must establish a sufficient likelihood that they will again be wronged in a similar way because the injury continues so long as the equivalent access is denied. Id. at 1100-01. While relying on Tenth Circuit case law, the court held that the motivation to visit is irrelevant to the question of standing under Title III of the ADA and that, as ADA testers, their status does not deprive plaintiffs of standing. Id. at 1102.

**D. Unruh and DPA Claims are Properly Pled**

In California, "[t]wo overlapping laws, the Unruh Civil Rights Act (§ 51) and the Disabled Persons Act (§§ 54-55.3), are the principal sources of state disability access protection." *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044 [150 Cal.Rptr.3d 191, 290 P.3d 187] (*Jankey*).) "The Unruh Civil Rights Act broadly outlaws arbitrary discrimination in

---

[6] Here, Plaintiff encountered accessibility barriers personally.

public accommodations and includes disability as one among many prohibited bases. (§ 51, subd. (b).) As part of the 1992 reformation of state disability law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference the ADA [the Americans with Disabilities Act of 1990], making violations of the ADA per se violations of the Unruh Civil Rights Act. (§ 51, subd. (f); *Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at pp. 668-669.) This amendment was intended to extend to disabled individuals aggrieved by an ADA violation the full panoply of Unruh Civil Rights Act remedies. (*Munson*, at p. 673.) These include injunctive relief, actual damages (and in some cases as much as treble damages), and a minimum statutory award of $4,000 per violation. (§ 52, subds. (a), (c)(3); *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058, [123 Cal.Rptr.3d 395].)" (*Jankey*, *supra*, 55 Cal.4th at p. 1044.) "The Act is to be given a liberal construction with a view to effectuating its purposes." (*Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 28 [219 Cal.Rptr. 133, 707 P.2d 195] (*Koire*).)

Standing under the Unruh Civil Rights Act is broad. When "any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section... any person aggrieved by the conduct may bring a civil action...." (§ 52, subd. (c).) As the Supreme Court stated, "[A]n individual plaintiff has standing under the [Unruh Civil Rights] Act if he or she has been the victim of the defendant's discriminatory act." (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718].

So here, Plaintiff personally experienced violations of Unruh and suffered statutory damages. The Unruh claim is properly pled.

**E. Negligence is Properly Pled.**

The Honorable Sheila Oberto discussed Plaintiff's negligence claim in *Strojnik v. The Victus Group,* [EDC Cal. 1:18-c-01620-AWI-SKO] finding negligence to be properly plead [15] under indistinguishable circumstances:

> Under California law, negligence is presumed if the plaintiff establishes the following elements: "(1) the defendant violated a statute of a public entity; (2) the violation was the proximate cause of the plaintiff's injury; (3) the injury resulted from an occurrence the nature of which the statute was designed to prevent; and (4) the plaintiff suffering the injury was among the class of persons for whose protection the statute was adopted." *Saylor v.*

10

*Zeenat, Inc.*, No. Civ.S02-863WBS/DAD, at *2 (E.D. Cal. Aug. 13, 2002) (citing *Galvez v. Fields*, 88 Cal.App.4th 1410, 1420 (2001)).

Here, Plaintiff has sufficiently alleged that Defendant violated the ADA; the violation proximately caused Plaintiff to be deterred from visiting the Property; the injury is one the ADA was designed to prevent; and Plaintiff, as a disabled person, is among the class of persons for whose protection the ADA was adopted. *See Saylor v. Zeenat, Inc.*, No. Civ.S02-863-WBS/DAD, 2002 WL 33928621, at *2 (E.D. Cal. Aug. 13, 2002).

The complaint sufficiently states Plaintiff's claims under Title III of the ADA, the Unruh Civil Rights Act, the CDPA, and negligence per se...

Plaintiff adopts Judge Oberto's analysis.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons Plaintiff pleads that Defendant's Motion to Dismiss be denied in its entirety. Alternatively, Plaintiff seeks leave to amend.

Plaintiff verifies under the penalty of perjury that above stated facts are true to the best of his knowledge, information or belief.

RESPECTFULLY SUBMITTED [mailed] this 10th day of January 2020.

PETER STROJNIK

_____
Plaintiff

Mailed to the Court this 10th day of January, 2020.

Courtesy copy mailed to Phil Stillman.

/s/

11