**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER STROJNIK,<br><br>                Plaintiff,<br><br>v.<br><br>VILLAGE 1107 CORONADO, INC.,<br><br>                Defendant. | Case No. 19-cv-02210-BAS-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO RECONSIDER CONTEMPT RULINGS (ECF No. 51);**<br><br>**(2) VACATING CONTEMPT RULINGS (ECF Nos. 44, 45, 56);**<br><br>**(3) TERMINATING AS MOOT MOTIONS TO STAY (ECF Nos. 50, 57); AND**<br><br>**(4) TERMINATING AS MOOT SUPPLEMENTAL MOTION FOR CONTEMPT (ECF No. 61)** |

      Presently before the Court are Plaintiff Peter Strojnik, Sr.'s request to reconsider the Court's contempt rulings (ECF No. 51) and the parties' other contempt-related motions (ECF Nos. 50, 57, 61). This action started as an unremarkable disability discrimination case. It took a turn when the Court ordered Mr. Strojnik to pay Defendant $21,995 in attorney's fees under the Americans with Disabilities Act's fee-shifting provision for filing a frivolous lawsuit. Mr. Strojnik refused to comply, claiming an inability to pay.

Defendant moved for contempt, highlighting that Mr. Strojnik has received hundreds of thousands of dollars in settlement payments just in the past few years. Ultimately, the Court held an evidentiary hearing. The Court determined Mr. Strojnik is not credible, is concealing his substantial income, and can pay the attorney's fee award. Consequently, the Court found Mr. Strojnik to be in civil contempt and ordered him to pay additional fees as compensatory damages.

Although Mr. Strojnik's lack of candor is repugnant, the Court erred in using civil contempt in these circumstances. The Court's fee award is a money judgment, not a sanction for misconduct. The proper recourse for Defendant was to execute on the final judgment, not seek civil contempt. Therefore, for the following reasons, the Court grants Mr. Strojnik's motion for reconsideration, vacates the contempt rulings, and terminates as moot the parties' remaining motions.

I. BACKGROUND

A. Allegations

Mr. Strojnik, proceeding pro se,[1] filed this Complaint against Defendant Village 1017 Coronado ("Defendant" or the "Hotel") alleging three counts for violations of the Americans with Disabilities Act ("ADA"), the California Unruh Act and the California Disabled Persons Act ("DPA"), and one count of negligence. (Compl., ECF No. 1.)

Mr. Strojnik claimed he is disabled "by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate . . . and renal cancer [and] missing part of a limb (prosthetic right knee)." (Compl. ¶¶ 2–3.) Mr. Strojnik said he "walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation." (Id. ¶ 4.) Mr. Strojnik did provide greater detail as to the "mobility accessible features" he requires, but he claimed that "[b]y virtue of his disability, [he] requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted." (Id. ¶ 14.) Mr. Strojnik alleged he

---

[1] Although Mr. Strojnik was a practicing attorney in Arizona, he has been disbarred by that state, so in this case he is representing himself.

visited the Hotel and "encountered barriers to accessibility documented in Addendum A" to the Complaint. (*Id.* ¶¶ 15–16.) Addendum A provides blurry photographs, presumably taken from Defendant's website purporting to show items like "improperly configured handrails." (*Id.*, Addendum A.) Notably, Mr. Strojnik did not allege that he personally encountered these barriers, visited the Hotel at 1017 Coronado, or called the facility to see if these barriers exist or if alternative options are available for those with Mr. Strojnik's disabilities.

B. **Motion to Dismiss**

Defendant moved to dismiss the Complaint for lack of standing. (Mot. to Dismiss, ECF No. 4.) The Court granted the request, reasoning:

> In this case, even if the Court was to construe [Defendant's motion] solely as a facial attack, Plaintiff has alleged insufficient facts to support standing. He does not allege he ever visited the Hotel. Instead, he apparently looked online and took screenshots of photographs that he believed showed barriers to him entering the property. He does not claim that he called and confirmed that these barriers existed. He does not allege that he attempted to see if alternate accommodations were available to him. Clearly, he does not establish "injury-in-fact." However, he also does not establish deterrence. He does not allege sufficient facts to show actual knowledge of anything about the Hotel. And his claims about the alleged barriers he would encounter, accompanied by grainy photographs of undistinguishable features, are insufficient to show that any barriers existed at the Hotel.
>
> Furthermore, Plaintiff alleges insufficient facts to show that he intends to return to the Hotel. He lives in Phoenix, quite a distance from San Diego. He has apparently never visited the Hotel. Although Plaintiff initially counters that his "past patronage of the Napa area is confirmed by Exhibit 1," (Opp'n at 6:26–28), he fails to attach any Exhibit 1, and the Court notes that the Napa area is hundreds of miles and a full day's drive from San Diego. Plaintiff then alleges he traveled to the San Diego area five times in 2019. (*Id.* at 7:3–19). However, the Court takes judicial notice of the fact that Plaintiff filed recent lawsuits against at least 22 other lodging establishments in San Diego. In each of these cases, Plaintiff alleges that he plans to return to this lodging establishment when the alleged barriers he encountered online are removed. It defies credulity that Plaintiff intends to visit over twenty different establishments in San Diego when he lives in Phoenix. *See Cahill v. Liberty*

> *Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (a complaint must plead "enough facts to state a claim to relief that is plausible on its face").
>
> And the Court may look beyond the allegations in the Complaint. The Court has observed personally that, at least on some occasions, Plaintiff is able to walk without the assistance of a wheelchair or walker. Plaintiff does not allege when he needs the assistance of a wheelchair or that he needed the assistance of a wheelchair at the time he wished to visit the Hotel. As such, he has alleged insufficient facts to show even that he was disabled at the time he intended to visit San Diego. *See Rutherford v. Caesar's Mexican Rest., LLC*, No. 19-cv-1416-LAB (JLB), 2019 WL 4193392 (S.D. Cal. Sept. 3, 2019) (finding lack of standing because plaintiff did not indicate when or how often he uses a wheelchair or a cane).

(Order Granting Mot. to Dismiss 5:11–6:15 (footnote omitted).) Because Mr. Strojnik did not have a viable federal claim, the Court declined to exercise supplemental jurisdiction over the remaining state law claims and directed the Clerk to close the case. (*Id.* 8:6–14.) The Clerk entered an appropriate Clerk's Judgment. (ECF No. 16.)

### C.    Request for Fees or Sanctions

Defendant later brought a motion for attorney's fees or sanctions. (ECF No. 17.) Defendant first requested fees under the ADA's fee-shifting provision—42 U.S.C. § 12205. Section 12205 allows a court to award a party who prevails in a lawsuit filed under the ADA "a reasonable attorney's fee, including litigation expenses and costs." The purpose of awarding fees to a prevailing defendant is "to deter the bringing of lawsuits without foundation." *CRST Van Expedited, Inc., v. E.E.O.C.*, 578 U.S. 419, 432 (2016) (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 420 (1978)). The Supreme Court, therefore, has interpreted an analogous statute "to allow prevailing defendants to recover [only] when the Plaintiff's 'claim was frivolous, unreasonable or groundless.'" *Id.* (quoting *Christiansburg*, 434 U.S. at 421). This standard "applies to the award of both fees and costs to a prevailing defendant under the ADA." *Green v. Mercy Hous., Inc.*, 991 F.3d 1056, 1057 (9th Cir. 2021).

The Court granted Defendant's motion. (Order Granting Mot. for Atty's Fees, ECF No. 22.) After concluding Defendant was the prevailing party, the Court addressed whether

this lawsuit was "frivolous, unreasonable or groundless." (*Id.* 5.) The Court explained that the lawsuit met this test because: (1) Mr. Strojnik has had numerous ADA cases dismissed for lack of standing on similar grounds; (2) Mr. Strojnik's lack of specificity in his many complaints allows him to avoid alleging the specifics of his disability and the impact of the alleged barriers he encountered; and (3) Mr. Strojnik's has a practice of filing lawsuits without apparently traveling to the defendant lodging facilities, tactics that led him to being disbarred by the State of Arizona. (*Id.* 5–7.)

Therefore, the Court found fees were appropriate under 42 U.S.C. § 12205. Consequently, although the Court stated "it is likely that Defendant can establish evidence to justify sanctions under" 28 U.S.C. § 1927—which addresses an unreasonable and vexatious increase in court proceedings, the Court did "not reach this issue." (Order Granting Mot. for Atty's Fees 7–8.) The Court likewise did not consider Defendant's request for sanctions under the Court's inherent authority. (*See id.*) The Court then determined $21,995 in attorney's fees were reasonable and ordered Mr. Strojnik "to pay this amount forthwith" ("Fee Award"). (*Id.* 8.)

### D.  Request for Final Judgment

After the fee ruling, Defendant's counsel lodged a proposed Final Judgment, which included the Fee Award, addressed post-judgment interest, and substituted Defendant's counsel in lieu of Defendant as the judgment creditor. (ECF No. 24.) After analyzing the request for post-judgment interest, the Court entered the Final Judgment, stating:

> **JUDGMENT IS HEREBY ENTERED** in favor of Philip H. Stillman, attorney for Defendant Village 1107 Coronado, Inc. and against plaintiff Peter Strojnik, Sr., in the amount of $21,995.00, together with post-judgment interest accruing at 0.104% running from January 12, 2021 until the date of payment.

(ECF No. 25.)

### E.  Order to Show Cause Re: Contempt

Several weeks after the Court entered the Final Judgment, Defendant moved for an order to show cause ("OSC") as to why Mr. Strojnik should not be held in contempt. (ECF No. 26.) Defendant argued Mr. Strojnik was not complying with the Court's command

that he pay the Fee Award "forthwith," despite his ability to do so. (*Id.*) The Court granted the OSC request and ordered Mr. Strojnik to show why he should not be held in contempt. (ECF No. 27.) After Mr. Strojnik did not respond, the Court ordered Defendant to submit evidence to support a finding of contempt. (ECF No. 29.)

On April 13, 2021, the Court found Mr. Strojnik is in civil contempt of the Fee Award. (ECF No. 31.) Thereafter, the Court received Mr. Strojnik's response to the OSC. (ECF No. 33.) Mr. Strojnik alleged he received the OSC after his response deadline, claimed he is subject to "a superior UCC spousal maintenance lien" arising from his 2013 divorce, and implied that payment of the Fee Award would violate the lien and lead to a fraudulent transfer action against him. (*Id.*) Hence, the Court vacated its contempt order, ordered Mr. Strojnik to provide evidence of his inability to pay, and set the matter for a hearing. (ECF Nos. 38, 41.)

### F.    Contempt Proceedings

On June 14, 2021, the Court held an evidentiary hearing on the contempt issues. (ECF No. 44.) Mr. Strojnik was placed under oath and examined by Defendant and the Court. He gave preposterous testimony about his finances and other matters. After hearing testimony and considering the evidence submitted, the Court found:

1. Mr. Strojnik is in civil contempt of the Court's Attorney's Fees Order;
2. Mr. Strojnik has the ability to pay;
3. Mr. Strojnik's testimony concerning his ability to pay is not credible; and
4. A civil sanction of an additional $22,551 is appropriate to compensate Defendant for the cost of seeking a contempt finding against Mr. Strojnik.

(*Id.*) The next day, the Court issued an order to formalize its findings and clarify that the Court would place Mr. Strojnik into coercive incarceration at a follow-up June 28, 2021, hearing if he did not comply with the Court's orders. (ECF No. 45.)

On June 28, 2021, several events occurred. Defendant informed the Court that Mr. Strojnik had not complied with the latest contempt order but had made a partial payment of $1,450. (ECF No. 48.) The Court held its scheduled contempt hearing, where it ordered

Mr. Strojnik to continue making payments and threatened coercive incarceration, but expressed concern as to whether the contempt process was appropriate in these circumstances. (ECF No. 54.) The Court ordered Defendant to brief whether contempt is available in light of *In re Wallace*, 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013), and *Shuffler v. Heritage Bank*, 720 F.2d 1141 (9th Cir. 1983). The Court also set another follow-up contempt hearing for August 2, 2021. The Court refers to its written contempt findings (ECF No. 45) and oral rulings at the two contempt hearings (ECF Nos. 44, 56) as the "Contempt Rulings."

In addition, shortly before the Court held its June 28, 2021, hearing, a Notice of Appeal from Mr. Strojnik was docketed with a one-line request for a stay. (*See* ECF Nos. 49, 50.) Mr. Strojnik also filed a "Notice of Partial Payment with Undertaking to Pay Full Amount Plus Interest and Request for Relief." (ECF No. 51.) In this second filing, Mr. Strojnik asked the Court to reconsider its contempt finding or issue a payment schedule. (*Id.*) On July 6, 2021, Mr. Strojnik filed an additional request to stay the Court's rulings made at the June 28, 2021, hearing in light of his Notice of Appeal filed the same day. (ECF No. 57.)

On July 15, 2021, Defendant responded to the Court's request to further brief the contempt issue. (ECF No. 58.) On July 26, 2021, the Court vacated the remaining contempt hearing, noting it would issue a written order on the outstanding issues. (ECF No. 59.) Finally, on September 15, 2021, Defendant filed another motion for contempt, arguing Mr. Strojnik was in contempt of the Court's June 2021 rulings because he did not make any more progress payments. (ECF No. 61.)

## II.   ANALYSIS

### A.   Jurisdiction

The Court first addresses whether the Notice of Appeal deprives the Court of jurisdiction. The Court's June 15, 2021, post-judgment civil contempt order is final and immediately appealable under 28 U.S.C. § 1291. *Hilao v. Est. of Marcos*, 103 F.3d 762,

764 (9th Cir. 1996); *see also Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 854 (9th Cir. 1992). Mr. Strojnik appealed the contempt order on June 28, 2021.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *accord Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997). That said, a motion under Federal Rule of Civil Procedure 59 or 60 can affect the impact of a notice of appeal. Under Federal Rule of Appellate Procedure 4(a), if a party moves for relief under Rule 59 or 60 "no later than 28 days after the judgment is entered," then "files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order . . . when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(A), (B)(i); *see also* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.").

The same day Mr. Strojnik filed the Notice of Appeal, he asked the Court to reconsider the June 15, 2021, contempt order. (ECF No. 51.) Mr. Strojnik argues reconsideration is appropriate because: (1) the Final Judgment did not include a command for Mr. Strojnik to pay the amount "forthwith"; and (2) imprisonment for debt has been abolished in the United States, *i.e.*, contempt, including coercive incarceration, cannot be used to collect on a typical money judgment or "debt." (*See id.* at 2, 4.) *See* 28 U.S.C. § 2007 ("A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished."); *see also Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996) (distinguishing incarceration for contempt from imprisonment for debt); *Sec'y U.S. Dep't of Lab. v. Koresko*, 726 F. App'x 127, 132–33 (3d Cir. 2018) (same).

Mr. Strojnik does not cite a Federal Rule of Civil Procedure for his reconsideration request, but the substance of his motion controls. *See United States ex rel. Hoggett v. Univ.*

*of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017); *accord Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, 836 F. App'x 496, 498 n.2 (9th Cir. 2020). Both Rule 59(e) and Rule 60(b) may govern the reconsideration motion. *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993); *see also Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) (applying reconsideration standard to appealable contempt order issued to enforce consent decree); *Dynamics, Inc. v. Biolitec, Inc.*, 974 F. Supp. 2d 1, 5 (D. Mass. 2013) (considering defendants' request for relief from contempt order under Rules 59(e) and 60(b)).

Rule 59(e) provides "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). In comparison, Rule 60(b) allows a court to relieve a party from a final order or judgment because of, among other things, "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." *Id.* 60(b)(1), (6). A motion for reconsideration is treated as a motion to alter or amend a judgment under Rule 59(e) if it is filed within the rule's deadline. *See United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992) (applying prior version of Rule 59(e)). "Otherwise, [the motion] is treated as a Rule 60(b) motion for relief from a judgment or order." *Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001). Accordingly, because Mr. Strojnik filed his reconsideration motion sooner than twenty-eight days after the appealable contempt order, the Court construes his request as arising under Rule 59(e). *See Nutri-Cology*, 982 F.2d at 397.

Moreover, given that Mr. Strojnik sought reconsideration under Rule 59(e) at the same time he appealed, his reconsideration request "suspended his notice of appeal, which will not take effect until this Court has ruled on the motion." *See Barrett v. Oregon*, No. 6:14-CV-01204-HZ, 2015 WL 3823854, at *2 (D. Or. June 19, 2015); *see also Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1064 (9th Cir. 2002) ("Under Rule 4(a)(4)(A), the Millers' Rule 60(b) motions prevented the Millers' notices of appeal from becoming effective until the district court rules on the merits of those motions."); *cf. NuScience Corp. v. Henkel*, 585 F. App'x 573, 574 (9th Cir. 2014) (noting "Rule 60(b) motion for relief

from the contempt order could toll the time to file an appeal" from contempt order); *Mendez v. Gomez*, 51 F.3d 281 (9th Cir. 1995) (holding appeal in abeyance in light of pending Rule 59(e) motion).

Hence, the Court concludes it has jurisdiction to resolve Mr. Strojnik's request to reconsider the Contempt Rulings under Rule 59(e), notwithstanding his Notice of Appeal.[2]

**B.     Reconsideration**

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Courts "should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). Whether to grant or deny a motion for reconsideration is in the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).

Mr. Strojnik's reconsideration request and the Court's order seeking supplemental briefing (ECF No. 54) implicate the same issue: whether civil contempt is appropriate to enforce the Court's Fee Award and Final Judgment. A court can impose sanctions for civil contempt "(1) to compel or coerce obedience to a court order; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Shuffler*, 720 F.2d at 1147 (citations omitted).

Contempt, however, is not appropriate to collect on a money judgment. Under Federal Rule of Civil Procedure 69(a)(1), a money judgment is "enforced by a writ of

---

[2] If the Ninth Circuit reaches the opposite conclusion, however, the Court respectfully requests that this Order be construed as arising under Federal Rule of Civil Procedure 62.1(a). *Cf. Shuffler*, 720 F.2d at 1145 n.1. If the Court lacks authority to grant Mr. Strojnik's reconsideration request in light of the appeal, Rule 62.1(a) allows the Court to "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." For the reasons explained in this Order, the Court would grant the motion and set aside the Contempt Rulings.

execution, unless the court directs otherwise." This language is narrowly construed to mean a court cannot enforce a money judgment by contempt, except "where established principles so warrant." *Hilao*, 95 F.3d at 854; *see also, e.g.*, *Shuffler*, 720 F.2d at 1147 (stating that to secure compliance with a money judgment, the judgment creditor must seek "a writ of execution, not . . . a fine of contempt for the period of non-payment"); *Wright & Miller*, 12 Fed. Prac. & Proc. Civ. § 3011 (3d ed. 2021) ("As a general matter, debtors' prison has been abolished in this country, and a money judgment is not a personal order to the defendant that is enforceable by contempt[.]").[3]

Although contempt is not proper for enforcing a money judgment, "a court's monetary sanction for a contemnor's misconduct is not an 'ordinary' money judgment, and therefore the use of the contempt power is a proper method to enforce a sanction for misconduct." *In re Wallace*, 490 B.R. at 907 (citing *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997)). Hence, in *Wallace*, where the bankruptcy court sanctioned the appellants for willfully violating the discharge injunction, contempt could be used when the appellants failed to pay the sanctions award. *Id.* at 908. Similarly, in *Cleveland Hair Clinic*, which the *Wallace* decision relied upon, the Seventh Circuit found contempt was appropriate to enforce sanctions levied against an attorney who provided false information and failed to disclose relevant information to the court. 106 F.3d at 166; *see also Cleveland Hair Clinic*, 200 F.3d 1063, 1064–68 (7th Cir. 2000) (elaborating on underlying misconduct in follow-up appeal).

By contrast, in *In re Javedanfar*, the court awarded the plaintiff attorney's fees because the plaintiff prevailed on appeal to the Ninth Circuit. No. 2:13-BK-27702-ER, 2021 WL 4739191, at *2 (Bankr. C.D. Cal. Oct. 12, 2021). The plaintiff tried to use the court's contempt power to collect on the award, but the court rejected the attempt. *Id.* The

---

[3] Some "cases have upheld the use of contempt in the enforcement of money judgments, but they have done so where state law allowed that procedure." *Hilao*, 95 F.3d at 855. Generally, in California, "a money judgment is not enforceable by contempt." *People v. Smith*, 81 Cal. App. 4th 630, 642 (2000).

court reasoned contempt was not available because the defendant had "not engaged in misconduct of the type at issue in *Wallace*." *Id.*

In this case, the Court ordered Mr. Strojnik to pay Defendant attorney's fees under the ADA's fee-shifting provision—42 U.S.C. § 12205. Defendant then requested the Court enter a Final Judgment. Upon doing so, the Court analyzed the statute governing interest on money judgments in civil cases, 28 U.S.C. 1961(a). The Court then ordered that judgment be entered "against plaintiff Peter Strojnik, Sr., in the amount of $21,995.00, together with post-judgment interest accruing at 0.104% running from January 12, 2021 until the date of payment." (ECF No. 25.) The question, then, is whether the Fee Award is a typical "money judgment" or a "sanction for misconduct." The Court is persuaded that the award falls under the first category for several reasons.

First, the Court reduced the Fee Award to a Final Judgment, which is plainly a "money judgment." "[A] money judgment consists of two elements: '(1) an identification of the parties for and against whom judgment is being entered, and (2) a definite and certain designation of the amount which'" one party owes the other. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1101 (9th Cir. 2011) (quoting *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 275 (3d Cir. 1984)). The Final Judgment orders Mr. Strojnik to pay money and does not require him to perform a specific act. *See* Fed. R. Civ. P. 70. Therefore, contempt is not appropriate to enforce the Final Judgment unless "established principles so warrant." *See Hilao*, 95 F.3d at 854.

Second, the Court never referred to the Fee Award as "sanctions," let alone a "sanction for misconduct." A "sanction" is "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." SANCTION, Black's Law Dictionary (11th ed. 2019); *see also Damon Key Leong Kupchak Hastert v. Westport Ins. Corp.*, 421 F. Supp. 3d 946, 954 (D. Haw. 2019) (defining "sanction" to interpret whether insurance policy applies to contempt proceedings arising from federal asset freeze order). "Misconduct" is "[a] dereliction of duty; unlawful, dishonest, or improper behavior, esp.

by someone in a position of authority or trust." MISCONDUCT, Black's Law Dictionary (11th ed. 2019); *see also id.* (defining misconduct as "[a]n attorney's dishonesty or attempt to persuade a court or jury by using deceptive or reprehensible methods"). The Court used neither of these terms when assessing attorney's fees against Mr. Strojnik under 42 U.S.C. § 12205.

Third, the Court awarded Defendant attorney's fees because Defendant was the prevailing party under 42 U.S.C. § 12205, not because sanctions were appropriate under the Court's inherent sanction authority or on another basis. *See United Studios of Self Def., Inc. v. Rinehart*, No. SA CV 18-1048-DOC (DFMx), 2020 WL 1230621, at *2 (C.D. Cal. Feb. 10, 2020) (distinguishing between fees recoverable under state statute for contractual fee-shifting provisions and fees recoverable under court's inherent authority, which were based on "bad faith litigation tactics and fraud on th[e] Court"). Although the Court noted it is likely that Defendant could establish evidence for sanctions under 28 U.S.C. § 1927, the Court did "not reach this issue." (Order Granting Mot. for Atty's Fees 7–8.) *See also In re Girardi*, 611 F.3d 1027, 1060–61 (9th Cir. 2010) (discussing intent requirement for sanctions under § 1927). Nor did the Court analyze Defendant's request for sanctions under the Court's inherent authority. (*See id.*) Sanctions under a court's inherent authority are appropriate against those who "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or acted in "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). These sanctions are available only if the court "specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Again, although Mr. Strojnik's conduct may have met this standard, the Court made no such finding here. The Court mentioned "a showing of bad faith could support a finding that the lawsuit was 'frivolous, unreasonable or groundless'" under 42 U.S.C. § 12205 (Order Granting Mot. for Atty's Fees 5–6), but the Court did not go so far as to find "bad faith." *See Christiansburg*, 434 U.S. at 421 (explaining that under fee-shifting provision standard, "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him").

Fourth, Defendant's counterarguments are unconvincing. Defendant argues the Fee Award "is clearly akin to a sanction for misconduct, given that attorney's fees can only be awarded to a prevailing defendant if the ADA case was 'clearly frivolous, unreasonable, and groundless.'" (Def.'s Supp. Br. 5.) The Court is unmoved. Using contempt to enforce a money judgment is the exception to the rule. Enforcement by contempt exposes a party to the Court's panoply of powers. Contempt should not be available simply because a fee award is close to a sanction for misconduct, particularly where the Court's Fee Award declined to reach the issue of sanctions for misconduct. *Cf. In re Costa*, 172 B.R. 954, 963 (Bankr. E.D. Cal. 1994) (noting courts "should be cautious when authorizing contempt proceedings," as "[c]ontempt is serious business that nobody takes lightly"). And it is one thing to make civil rights plaintiffs liable for attorney's fees where suits are groundless, it is quite another to allow contempt to be used to enforce those fee awards. *See Christiansburg*, 434 U.S. at 422. Consequently, because the Fee Award here was not clearly a sanction for misconduct, "established principles" do not justify the Court's use of contempt. *See Hilao*, 95 F.3d at 854.

Defendant also focuses on the Fee Award's statement that Mr. Strojnik is to pay the fees "forthwith." (Def.'s Supp. Br. 1, 2, 14.) The Court similarly relied on this "forthwith" command in its Contempt Rulings to determine Mr. Strojnik failed to comply with the Fee Award. The Court's statement that Mr. Strojnik is to pay the Fee Award "forthwith" does not turn what is otherwise a money judgment into a sanction for misconduct. And, regardless, the Final Judgment reduced the Fee Award to an enforceable judgment. *See Jennings v. Stephens*, 574 U.S. 271, 277 (2015) ("Courts reduce their opinions and verdicts to judgments precisely to define the rights and liabilities of the parties."). The Final Judgment was immediately payable, but enforcement was "stayed for 30 days after its entry." Fed. R. Civ. P. 62(a).

Finally, Defendant cites *Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020), and *In re Hernandez*, No. BAP SC-13-1301, 2014 WL 1345940 (B.A.P. 9th Cir. Apr. 4, 2014), to justify the use of contempt here. In *Parsons*, the defendants agreed to comply with certain

"performance measures" designed to improve healthcare at their state prisons. 949 F.3d at 451. The parties' stipulation gave the court authority to enforce their settlement "through all remedies provided by law," including "an injunction requiring specific performance." *Id.* at 454. The court later issued an order to show cause that required the defendants to comply with specific performance measures. *Id.* at 452. Then, when the defendants did not comply with the order, the court levied a monetary contempt sanction to coerce compliance. *Id.* This case is dissimilar. It involves using contempt to enforce an order to pay attorney's fees under a fee-shifting provision, not using contempt to enforce an order that required performance of specific acts authorized under a settlement.

*In re Hernandez* is similarly distinguishable. That unpublished case involved an attorney fee order entered because the appellant "willfully violated the [bankruptcy] automatic stay by declining to release [] seized funds to [the debtor]." *In re Hernandez*, No. BAP SC-13-1301, 2014 WL 1345940, at *7 (B.A.P. 9th Cir. Apr. 4, 2014). The appellant argued the fee order "was not a sanction order for misconduct," but the Bankruptcy Appellate Panel rejected that argument as "quibbling." *Id.* The panel reasoned the fee order "cannot fairly be characterized as anything other than a sanction," and ample authority supported the "view that when a party's willful failure to comply with an order constitutes misconduct it may be remedied via contempt sanctions." *Id.* Therefore, contempt could be used to enforce the "stay violation sanctions order." *Id.* at *6–8. Unlike the sanction in *Hernandez*, the Court's Fee Award was not entered because Mr. Strojnik willfully failed to comply with a court order. Moreover, the Court declined to reach the requests for "sanctions."

In sum, it was plainly incorrect to use contempt to enforce the Fee Award and Final Judgment. The Court did not label or consider the statutory fee award as a sanction for misconduct. Consequently, established principles did not justify using contempt to collect on a money judgment like the one entered here. *See Hilao*, 95 F.3d at 854. Further, because the Court's initial contempt finding underpins the remaining Contempt Rulings, they

should not stand. The Court thus grants Mr. Strojnik's reconsideration request and will vacate the Contempt Rulings.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Strojnik's request to reconsider the Contempt Rulings. (ECF No. 51.) The Court **VACATES** its Contempt Rulings (ECF Nos. 44, 45, 54). The Court **TERMINATES AS MOOT** Mr. Strojnik's motions to stay (ECF Nos. 50, 57). The Court also **TERMINATES AS MOOT** Defendant's additional motion for contempt of the Court's June 28, 2021, order (ECF No. 61).

**IT IS SO ORDERED.**

**DATED: December 21, 2021**

Hon. Cynthia Bashant
United States District Judge